### FIRTH CARPET CO. v. NATIONAL LABOR RELATIONS BOARD.

#### No. 310.

Circuit Court of Appeals, Second Circuit.

July 21, 1942.

---

Thomas Kiernan, of New York City (White & Case and Caspar C. Garrigues, Jr., all of New York City, on the brief), for petitioner.

Joseph F. Castiello, of Washington, D. C., Atty., National Labor Relations Board (Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, Gerhard P. Van Arkel, Asst. Gen. Counsel, Frank Donner, and Dominick Manoli, all of Washington, D. C., Attys., National Labor Relations Board, on the brief), for respondent.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The Firth Carpet Company has petitioned for review of an N.L.R.B. order requiring it to reinstate seven employees with back pay and to cease and desist discouraging membership in the Textile Workers Union of America or otherwise interfering with rights guaranteed by the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. The Board answered and requested enforcement. The Board's decision stating the facts in full will be found in 33 N.L.R.B. No. 50, July 9, 1941; we shall here discuss only the facts necessary for adjudication of the points raised before us.

■ First. The Cease-and-Desist Order. As to this, petitioner asserts that there is no substantial evidence for its support. The facts on which the Board relies for its finding are these: Petitioner had an exclusive bargaining agency contract with the Textile Workers from May, 1937, to May of the following year. This was not renewed because, petitioner said then, an inside union represented a majority of the employees. Charges were thereupon filed with the Board and a consent order was entered into requiring disestablishment of the inside union and termination of various anti-union activities. 10 N.L.R.B. 944. In April, 1939, the superintendent of one of petitioner's departments made an uncontradicted statement

about the union organizer which exhibited a strong anti-union bias. And in May, 1939, occurred the events, hereinafter discussed, upon which the reinstatement order is based. The conclusion which we state below as to that supports the result here. Taken all together, this is enough to justify the Board's cease-and-desist order.

Second. The Reinstatements. On May 9, 1939, the foreman of the shipping department at petitioner's Firthcliffe plant ordered three employees, members of the Textile Workers, to stop the work they were doing and to aid other workers engaged in another capacity in the same department. These three feared that if they left their jobs non-union carpenters would be brought in temporarily to do their work, and that eventually the carpenters might get the jobs permanently. Accordingly, they demurred, and the shop chairman joined in and insisted on a guaranty that if the three left their jobs to do another one, no one would be brought in, and that if work piled up the three could work overtime. The foreman took the matter up with the main office and reported back that no guaranty could be given. Thereupon the three employees refused to do the job they were ordered to do and the foreman told them to go. After they left, the shop chairman and six other employees of the shipping department walked out in sympathy. All ten of these were union men and, except for one non-union man, comprised the whole shipping department.

On the day following, which was not a regular pay day, all ten received pay checks through the mail. Efforts were made by the union to obtain reinstatement, but these failed. Finally, on May 24, all ten were sent a letter stating (a) that on three occasions the men had engaged in sit-downs; (b) that they had admitted soldiering on the job when an efficiency expert was around; (c) that they had failed to respond to an emergency call during the hurricane of 1938; (d) that one of the ten had threatened to call a strike when some outside employees were brought in to relieve a congested condition in the work; and (e) that the walkout on May 9 was unjustified. The letter then went on to deny reinstatement, but left open the question of re-engagement of any of the ten, to be decided "in the light of the necessity for keeping the plant running in an orderly manner." All this was, of course, more formally stated than our statement indicates; in truth, it was a carefully framed legal document occupying six pages of the printed record.

The Board, one member dissenting, found that the three who refused to work were discharged on May 9, but that the other seven were discharged on May 10, when they received their checks. The refusal to reinstate the three was held valid because they had refused to work, but the refusal to reinstate the seven was found to be solely because they had struck, and therefore a violation of § 8(3), 29 U.S.C.A. § 158(3).

■ The first point raised by petitioner is that the record does not support a finding that the seven were not reinstated because of the strike. The other grounds stated in the May 24th letter must be relied upon according to petitioner. The Board maintains, however, that on different occasions petitioner has conceded that the walkout was the sole reason for the refusal to reinstate, and citations from the brief before the Board, before us, and the petition for review are relied upon. Be that as it may, we think the Board can be sustained on the record without recourse to any concessions. The superintendent testified, not without some backing and filling, that he considered the sympathy strike the "main reason" for the discharge. And there is pretty clear evidence that the other reasons stated in the letter to the men were makeweights. For example, the three sitdowns had passed without disciplinary action, the claimed admission of soldiering was denied by the person alleged to have made it, and the hurricane episode was found by the Board to be inaccurate in some respects, and satisfactorily explained in others. We think the Board was justified in disregarding these various arguments and in concluding that the refusal to reinstate was based on the fact that the seven men had gone out on strike.

■ The second point raised is that even assuming that the refusals to rehire were prompted by the strike, they were not unlawful discriminations by petitioner. For this view two cases are relied upon. N. L. R. B. v. Condenser Corp., 3 Cir., 128 F.2d 67; Hazel-Atlas Glass Co. v. N. L. R. B., 4 Cir., 127 F.2d 109. Both of these are cases involving so-called "illegal" strikes. In the Condenser case, the court said an employer need not reinstate employees who were discharged for standing idle at their machines even after the fore-

man promised to take up their demands at the end of the day. And in the Hazel-Atlas case, the court upheld an employer who refused to reinstate a foreman who would not operate machines after the operators had struck in contravention of a no-strike clause in their union contract. Whether or not we should have characterized these particular strikes as "illegal," we can accept these cases as inapposite here. By no stretch of the imagination can the striking seven be considered as having walked out "illegally." Petitioner attempts to equate "illegal" with "unjustified." But this is not only a gross shift in meaning; it does not meet the issue, because we can hardly say the walkout of the seven, or the attitude of the other three not reinstated by the Board, was unjustified. All had a fear that their jobs were likely to be taken over by non-union men. In their minds it was a justified grievance; this makes it a "legal" strike preserved by Section 13 of the Act, 29 U.S.C.A. § 163.

Finally, petitioner makes the point that, where employees strike for a reason other than that the employer engaged in unfair labor practices, they need not be reinstated if in the meantime new employees have been hired to take their places. N. L. R. B. v. Mackay Radio & Teleg. Co., 304 U.S. 333, 345, 58 S.Ct. 904, 82 L.Ed. 1381. Here, however, no replacements were made. Petitioner transferred some employees from other departments in a makeshift arrangement and then eventually hired some new people in other departments. It is apparently only an afterthought to maintain that the refusal to take the men back was because they had been replaced. To rely on the Mackay case it would have been necessary to convince the Board that the reason for refusal to rehire was that the jobs had been immediately filled. The May 24th letter clearly shows that no such reason existed.

Some point is made of a difficulty in upholding the Board's order as to the seven when the Board found in favor of petitioner as to the other three. Mere inconsistency of itself is of no interest to us; the Board conceivably may have been wrong about the three.[1] In any event, whether or not the discharge of the three was justified, the refusal to reinstate the seven because they had struck in sympathy could be discriminatory. The Board so found, and there is substantial evidence to support the finding.

Third. Board's Delay. Petitioner complains about the Board's delay. The showing of delay is not sufficient to establish unreasonableness by the Board. N. L. R. B. v. Electric Vacuum Cleaner Co., 315 U.S. 685, 62 S.Ct. 846, 86 L.Ed. ——; N. L. R. B. v. Isthmian S. S. Co., 2 Cir., 126 F. 2d 598.

The petition to review is denied and the Board's request for an order of enforcement is granted.

---

[1] Compare the dissenting opinion of Member Smith, 33 N.L.R.B. No. 50, July 9, 1941; 55 Harv.L.Rev. 269, 270.