## NATIONAL LABOR RELATIONS BOARD v. EL PASO ELECTRIC CO.

### No. 9401.

Circuit Court of Appeals, Fifth Circuit.

Jan. 27, 1943.

Rehearing Denied March 12, 1943.

Robert B. Watts, General Counsel, National L. R. Board, Ernest A. Gross, Associate General Counsel, N.L.R.Bd., Howard Lichtenstein, Asst. Gen. Counsel, N.L.R.Bd., A. Norman Somers, Frank Donner, and L. N. D. Wells, Jr., of St. Louis, Mo., Attys., N.L.R.Board, all of Washington, D. C., for National Labor Relations Board.

Palmer Hutcheson and Dillon Anderson, both of Houston, Tex., and J. C. Brooke and Volney M. Brown, both of El Paso, Tex., for El Paso Electric Co.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

### PER CURIAM.

The National Labor Relations Board has petitioned us to hold El Paso Electric Company in contempt of our decree rendered June 20, 1941, enforcing an order of the Board against the company. The order of the Board was dated two years previous, and required the company to cease and desist from dominating, interfering with or contributing support to El Paso Electric Company Employees Alliance or any other labor organization, and that it withdraw recognition from and disestablish the Alliance as the bargaining agency of its employees, and generally cease from interfering with its employees in the exercise of their rights under Section 7 of the National Labor Relations Act, 29 U.S.C.A. § 157. It is now alleged that the company, in contempt of the decree, has recognized and dealt with the Utility Workers Union, Inc., which is but a continuation of the Alliance, and has interfered with the employees by requiring them not to wear union insignia while in uniform at work. An answer denies contempt and sets forth the company's version of the facts.

The case is submitted on the pleadings and on a stipulation of facts. On the facts thus appearing we do not find a case of contempt made out.

The company has a rule of long standing which requires that its employees do not display union insignia when on duty. We surmise the purpose is to discourage union arguments and disputes among the men on duty. In any case, it appears to have been enforced without discrimination. We do not think the enforcement of it since our decree is shown to have been intended to deny the right of the employees to organize, or to violate the decree in any manner.

Nor do we find that the Utility Workers Union, Inc., is the same as the old Alliance or that the company has at all dominated or interfered with it, or supported it, contrary to the decree. The Alliance appeared before the Board and in this court by its own counsel, fighting independently of the company for its existence. Before the case was reached for argument in court its counsel advised that the order of the Board for disestablishment

would probably be sustained, and advised dissolution. The Alliance was dissolved by its own vote. Its former counsel, cooperating with some of its members, then chartered the Utility Workers Union, Inc., under the laws of Texas, organized it, and obtained a majority of the employees as members, including about one hundred who had not belonged to the Alliance. The company had nothing at all to do with it, and its officers did not know of its existence till a month after the organization, when a demand was made by it to be recognized as bargaining agent as representing a majority of the employees. The company's auditor was required to check the membership, and found that the Union did have a majority. The company's attorney advised that it was bound to bargain with the Union and it did so, making first a preliminary contract, and later a fuller one. When the hearing came on later before this court, the counsel for Alliance announced its dissolution and withdrew, but the case proceeded to decree. After decree which included a requirement that the Alliance be disestablished as bargaining agent and that the company reinstate a number of discharged employees with back pay, the company made the reinstatements, posted the required notices, and notified the Regional Director of what had been done, as the Board's order and our decree required. He expressed himself as satisfied. When a few months later a renewal of the contract with the Union was proposed, the Regional Director was notified and apparently acquiesced. At the instance of a rival union the Board instituted this contempt proceeding. No witness testifies that the company or any official had anything to do with the dissolution of the Alliance or the chartering and organization of the Union. The employees, as has often been said, had the right to associate themselves freely in a new organization, and they could employ their former attorney, who had no connection with the company. They obtained on his advice a State Charter. Several supervisory employees were among the charterers, but only one was active in the organization or paid any dues. They were all ruled out as members by the Union itself a few weeks later. The minutes of the Union show an independent spirit throughout, with no trace of collaboration by anyone for the company. We find nothing to show any trick or contrivance on the part of the company to evade the decree.

It was not bound by the decree to disestablish the Union. The employees were not bound to wait for a decree disestablishing the Alliance if they preferred to abandon it and make a fresh start. If the Board thinks the Union does not really represent the majority of the employees by their free choice, there are remedies it may apply. The petition to hold the company in contempt is denied.