## CARTER CARBURETOR CORPORATION v. NATIONAL LABOR RELATIONS BOARD.

### No. 12636.

Circuit Court of Appeals, Eighth Circuit.

Feb. 21, 1944.

William R. Gentry, of St. Louis, Mo. (N. A. Stancliffe and John L. Farrell, both of New York City, on the brief), for petitioner.

Jack G. Evans, Atty., National Labor Relations Board, of St. Louis, Mo. (Robert B. Watts, General Counsel, Howard Lichtenstein, Asst. General Counsel, William J. Isaacson, and William J. Avrutis, all of Washington, D. C., on the brief), for respondent.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an original proceeding brought by Carter Carburetor Corporation to review an order of the National Labor Relations Board requiring it to cease and desist from certain unfair labor practices. The National Labor Relations Board in its answer asked that the order be enforced. The order requires petitioner to cease and desist from certain unfair labor practices found by the Board, to withdraw recognition from and disestablish the Mutual Workers' Union as a collective bargaining representative of its employees, to rescind its rule barring union activities, except in so far as it prohibits union activity and discussion during working hours, at places where work is being performed, and to reinstate with back pay the employees discriminated against, and to post appropriate notices.

The complaint against petitioner was based upon charges made by International Union, United Automobile, Aircraft and Agricultural Workmen of America (C. I. O.), Local 819. Upon hearing on these charges the Board found that petitioner had violated Section 8(1) (2) (3) of the Act, 29 U.S.C.A. § 158 (1–3), (1) by dominating and interfering with the formation and administration of Mutual (a company-dominated union), and contributing support to it; (2) by interfering with, restraining and coercing its employees in the exercise of their rights under the National Labor Relations Act by the promulgation of a rule prohibiting solicitation for or discussion of union organizations, not only during working hours, at places where work was being performed, but anywhere on petitioner's premises; and (3) by discriminatorily discharging 31 employees because of their membership and activities in the union.

The order requires petitioner to cease and desist from the unfair practices so found; to rescind its rule prohibiting union activities, except in so far as it prohibits union activity and discussion during working hours, at places where work is being performed; to reinstate with back pay the discharged employees, and to post

appropriate notices. Petitioner here challenges that part of the decision and order of the board holding that the 31 named employees were wrongfully discharged and requiring their reinstatement with back pay, and that the petitioner adopted a discriminatory rule and discriminatorily interpreted its application.

Petitioner is engaged in the manufacture of carburetors primarily for use in automobiles, but since war conditions have prevailed it has manufactured fuses for high explosive howitzer shells for the United States and Great Britain, in addition to its production of carburetors.

■ We shall first consider the decision of the Board with reference to the rule adopted and promulgated by petitioner relative to the solicitation of membership in any union on company property or time. The rule was embodied in a notice posted on the premises February 25, 1943 and reads as follows:

"Notice

"The solicitation, oral or written, of membership in any union, on company property or time, is prohibited. A violation of this rule will be considered grounds for dismissal."

On its face the rule may not be objectionable as a regulation for the conduct of business. Midland Steel Products Co. v. N.L.R.B., 6 Cir., 113 F.2d 800; N.L.R.B. v. Williamson-Dickie Mfg. Co., 5 Cir., 130 F.2d 260. That it forbids no other form of solicitation is not important nor material. The employer need not in a single rule attempt to embody all forms of solicitation, and on its face at least this rule does not single out any particular union but applies equally to all. There is evidence in the record indicating that discussions of such matters between employees even during their rest periods became acrimonious, bitter and provocative. If the solicitation for union membership on its premises during working hours gave rise to bickering, disputes, ill-will and lack of harmony among its employees, thus affecting their efficiency, it would not be unreasonable to adopt such a rule as would tend to remove the causes which lowered their efficiency. N.L.R.B. v. El Paso Electric Co., 5 Cir., 133 F.2d 168; Midland Steel Products Co. v. N.L.R.B., supra. We think, however, that the rule was misconstrued by petitioner. It purports to forbid solicitation but it was construed to prohibit all "talk about unions" and union activities. In the circumstances revealed by the record, the notice embodying this rule, interpreted as it was, warranted the Board in finding that it was an unfair labor practice. The Board found, and we think the evidence warrants the finding, that the promulgation of this rule and the posting of the notice were timed and prompted by motives of hostility toward the union and was designed to interfere with the employees in their self-organization and in the selection of a collective bargaining agent.

■ We shall first refer to some of the circumstances which we think warranted the Board in finding that the promulgation and enforcement of this rule were for the purpose of interfering with the free exercise by the employees of their right of self-organization. About February, 1942, union activities among the employees of petitioner became quite marked. An executive board of the union was elected, open meetings were held, leaflets were distributed through the mail and at plant entrances, and a flood of union buttons became in evidence at the plant. On February 24, a large mass meeting was held by the union at which some 2600 handbills were distributed, containing the statement that "The zero hour is fast approaching when Carter's employees will be organized." Mutual had been established prior to this time and the activities in connection with the Mutual had been quite open and encouraged by petitioner; membership was solicited, collection of dues made, and tickets for activities were sold, all on the premises of petitioner during working hours. During four days, from August 12 to August 16, 1941, more than 1300 Mutual application cards were signed on the premises. All of the activities of Mutual seem to have had the sanction of petitioner, as they were not interfered with. The Board found that the purpose of posting the notice was to "impede the union's organizational campaign and to protect Mutual." We can not say that this finding is not sustained by substantial evidence. The Board was of the view that this rule promulgated and posted so opportunely was violative of the safeguards provided by Section 7 of the Act, 29 U.S.C.A. § 157. It would seem to be unnecessary to consider whether the rule under normal conditions and proper circumstances might properly have been adopted and enforced. N.L.R.B. v. Cities

Service Oil Co., 2 Cir., 122 F.2d 149. The vice is not necessarily in the rule itself but the manner in which and the purpose for which it was promulgated and employed. The modification, in the final analysis, is not very substantial. As modified, stated in the positive rather than the negative, it will read as follows: "All union activity and discussion on company property during working hours, at places where work is being performed, is prohibited. A violation of this rule will be considered grounds for dismissal." We think that under the circumstances disclosed by the record, the modification required by the Board is not unreasonable.

We shall next consider the provision of the order requiring the reinstatement with back pay of certain discharged employees. Everett Clark had been employed by petitioner in its shipping and receiving department since 1934. He joined the union September 30, 1941 and was elected its president January 5, 1942 and acted as the presiding officer at a meeting of the union held February 24, 1942. On February 26, 1942, he was discharged on instructions from the plant superintendent. His work had been satisfactory, but petitioner contends that it discharged him because he solicited union membership contrary to the rule that had been promulgated, and contrary to verbal warnings against such activities. We have already considered this rule. The Board found that of the five instances where Clark was charged with soliciting membership in the union, two only occurred on company premises, and these at a time prior to the commencement of work. As to the other three instances, the Board found that they did not in fact take place and the evidence sustains this finding, which is conclusive on us. N.L.R.B. v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368. The Board was of the view that he was in fact not discharged for the alleged violation of the rule but for his union activities. As to the four other employees, Breeden, Jones, Bryant and Mitchell, the evidence either failed to show solicitation, or showed that it was during times when the employee was not working. This finding also is sustained by substantial evidence.

The other employees who were discharged were involved in the agitation which followed Clark's discharge. The evidence is not without dispute, but in view of the Board's findings, the facts in connection with Clark's discharge may be stated as follows: Paul Bryant, William M. Breeden and Eugene Walker, union officials, decided to urge objections to Clark's discharge. They communicated with union members who were at work and urged them to "stop work and see what we can do about it." Machine shop foreman Gilda, observing Breeden conversing with operators, immediately reported him to the plant manager. The manager instructed Gilda to fire any one who "got off the job" and did not want to work. Gilda returned to the machine shop and finding that Walker and Breeden were not at their machines, discharged them. Three girls in the jet department started to the office to protest the discharge of Clark. They in turn were joined by about thirteen employees in the assembly department. There was talk of a strike and the three girls apparently did not take the most direct route to the office. Walter Johnson, assembly department foreman, ordered the idle employees to return to work. The group refused, saying they would not return to work until Clark was reinstated. Johnson reported to plant manager Ewart and again the employees were directed to return to work. This they declined to do, and in response to inquiries, Ewart said that Clark had been discharged for a violation of the notice. The employees requested that they be permitted to take their protest to the office, but this Ewart refused and said they would have two minutes in which to get back to work or be discharged. The employees declined to return to work unless Clark were reinstated. Thereupon Ewart discharged them.

During the lunch hour, on the date of Clark's discharge, eight maintenance department employees went to union headquarters, where the discharge of Clark was discussed, and upon their return to the plant, the assistant mechanic in charge of buildings, approached three of them and asked one of them if he was going to work. The employee replied in the negative, whereupon the assistant mechanic ordered all of them discharged. Five other maintenance department employees joined them and left the building. The assistant mechanic thereupon made out discharge slips for all of them, on the ground that they had "Walked off job. Discharged as per Mr. Ewart's instructions."

On February 27, Henry Bauer joined a picket line which had been established the

718

previous day by union members. After his shift began, his foreman reported him as an absentee, and discharge slips were prepared for him and another who had not reported for work but had joined the picket line. A detailed statement of the evidence in connection with these acts would add nothing but length to this opinion and serve no useful purpose. Counsel for petitioner argues persuasively as to the construction that should be placed upon the evidence relative to these discharges. The argument might well have been addressed to the Examiner or the Board, as it doubtless was, but in the final analysis it goes to the question of the weight of the evidence and the credibility of the witnesses, considerations with which we cannot concern ourselves.

The Board was of the opinion, and found as a fact, that all of these employees who were discharged following Clark's dismissal were discharged for participation in the demonstration at the plant, or for joining the picket line. The finding is sustained by substantial evidence. The discharge of Clark gave rise to a labor dispute defined by the Act as "any controversy concerning terms, tenure or conditions of employment." Section 2(9) National Labor Relations Act, 29 U.S.C.A. § 152(9). An employee includes "any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice * * *." Sec. 2 (3). Section 7 gives employees the right "to engage in concerted activities, or for the purpose of collective bargaining or other mutual aid or protection." This "mutual aid" and "concerted activities" include, we think, the right to join other workers in quitting work in protest over the treatment of a coemployee, or supporting him in any other grievance connected with his work or his employer's conduct. N.L.R.B. v. Peter Cailler Kohler Swiss Chocolates Co., 2 Cir., 130 F.2d 503; Firth Carpet Co. v. N.L.R.B., 2 Cir., 129 F.2d 633; N.L.R.B. v. Good Coal Co., 6 Cir., 110 F.2d 501; Rapid Roller Co. v. N.L.R.B., 7 Cir., 126 F.2d 452; N.L.R.B. v. Remington Rand, Inc., 2 Cir., 130 F.2d 919.

The Board having found that the petitioner discharged these employees because of their participation in union activities, we do not weigh the evidence upon which the finding is based, but examine it for the purpose of determining whether the finding is based upon substantial evidence. The contention of petitioner that some of these employees were discharged for independent acts warranting their discharge, such as walking away from their departments and conversing with other employees, is, we think, without merit. True, petitioner claims there were other reasons for discharging these employees, but the Board found that they were mere subterfuges and afterthoughts, and we can not say that this finding is not supported by the evidence. The petition to review and set aside the Board's order is therefore denied and a decree will be entered enforcing the order.