**NATIONAL LABOR RELATIONS BOARD v.
RED ARROW FREIGHT
LINES, Inc., et al.**

**No. 12672.**

United States Court of Appeals
Fifth Circuit.

March 11, 1950.

Petitions for Rehearing Denied
April 11, 1950.

Louis Libbin, Attorney, NLRB, Washington, D. C., David P. Findling, Assoc. Gen. Cnsl., NLRB, Washington, D. C., A. Norman Somers, Asst. Gen. Cnsl., NLRB, Washington, D. C., for petitioner.

Sam R. Sayers, Fort Worth, Tex., Jack Binion, Houston, Tex., for respondent.

Before HOLMES, WALLER, and RUSSELL, Circuit Judges.

WALLER, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order against Red Arrow Freight Lines, Inc., H. P. Brown, d/b/a Brown Express, W. A. Johnson, d/b/a Johnson Motor Lines, Johnson Storage & Distributing Company, Inc., Merchants Fast Motor Lines, Inc., H. E. English and O. B. English, d/b/a Red Ball Motor Freight Lines, Sproles Motor Freight Lines, Inc., Sproles-Red Ball Lines, Inc., wherein the Board ordered that the Respondents, Red Arrow Freight Lines, Inc., H. P. Brown, W. A. Johnson, Johnson Storage & Distributing Company, Inc., Merchants Fast Motor Lines, and Sproles Motor Freight Lines, Inc., shall:

1. Cease and desist from:

(a) Dominating or interfering with the administration of the National Association of Motorized Common Carrier Truck Line Employees;

(b) Giving effect to any contract now existing between said Respondents and said National Association of Motorized Common Carrier Truck Line Employees, hereinafter referred to as "the independent Union";

(c) Recognizing the independent Union, or any successor thereof, as the representative of their employees.

2. Take the following affirmative action:

(a) Withdraw all recognition from, and completely disestablish, the independent Union.

(b) Post appropriate specified notices;

(c) Notify the Regional Director within ten days as to what steps were taken to comply.

In addition to the foregoing the order directed the Respondents, H. E. English and O. B. English, doing business as Red Ball Motor Freight Lines, and Sproles-Red Ball Lines, Inc., to:

1. Cease and desist from:

(a) Doing any of the things set forth in 1(a), (b), and (c) above;

(b) Discouraging membership in the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, A. F. of L., by discriminatorily discharging or refusing to reinstate any of its employees or in any other manner discriminating in regard to their hire or tenure of employment;

(c) In any manner interfering with, restraining, and coercing their employees in the exercise of their right to self-organization, to form labor organizations, or to join International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, or any other labor organization.

2. Take the following affirmative action:

(a) Withdraw all recognition and completely disestablish the independent Union.

(b) Offer to J. D. Cranford immediate and full reinstatement to his former, or substantially equivalent, position, without prejudice to his seniority and other rights and privileges;

(c) Make whole J. D. Cranford and F. L. Thomas for any loss of earnings;

(d) Post notices;

(e) Notify Regional Director of action taken within ten days.

The members of the independent Union have hired counsel to urge upon us their desire to retain their Union which has served them satisfactorily as a bargaining agent over a period of some ten or twelve years, and we have sought to carry out their wishes and to lay out a pathway down which Section 157 of Title 29, U.S. C.A. might move and function according to its wording [1] and apparent purpose, viz., to permit employees—as distinguished from boards and unions—to choose their own bargaining agent. Under this section these employees, through their counsel, implored us to allow them to retain their Union despite all imputations of the illegitimacy of its birth, but the authority to grant that request has been placed in the National Labor Relations Board by Congress according to impelling judicial construction, and this Court cannot usurp the functions of the Board as to the means whereby to purge or prevent unfair labor practices found by the Board under substantial evidence to exist. A union that is conceived in iniquity is denied the privilege of reforming and returning accorded to the vilest sinner under Biblical standards.

Nor does time, that heals many wounds and cures many ills, and that generally allows "the dead past to bury its dead", serve either to dilute or to destroy the erstwhile domination, interference, or over-exuberance of an employer in the matter of the formation, support, and control of an independent union. But like the longevity of other evil that men do, interference, domination, and control seem to live even after the perpetrator's bones have been interred. See N. L. R. B. v. Pennsylvania Greyhound Lines, 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; N. L. R. B. v. Falk Corporation, 308 U.S. 453, 60 S.Ct. 307, 84 L.Ed. 396; N. L. R. B. v. Southern Bell Telephone & Telegraph Co., 319 U.S. 50, 63 S.Ct. 905, 87 L.Ed. 1250.

---

1. Title 29 U.S.C.A. § 157 is as follows: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in * * * concerted activities for the purpose of collective bargaining or other mutual aid or protection".

We cannot say that there is not substantial evidence in the record to support the Board's findings that in the dawn of this Union, some ten or twelve years ago, the employers took an all-too active part—not coercively, not threateningly, but by means which, perhaps, more effectively let it be known that it was the pleasure of such employers that the employees should associate themselves with the independent Union which Craig, a highly placed employee, had devised.

We are not prepared to say that the cacophony of clamorous circumstances which the Board has heard and heeded, and upon which its orders have been predicated, was without substantiality. Whether same was without preponderant weight, contrary to good labor relations, devoid of justice, the aider and abettor of a ruthless raid on this Union by one larger and more powerful, were matters committed to the wisdom and conscience of the Board.

Nor is it within the province of this Court to prescribe an election wherein the name of the independent union shall be on the ballot by which democratic process the employees might select the union of their choice as their bargaining agent. N. L. R. B. v. Falk Corporation, supra; N. L. R. B. v. Southern Bell Telephone & Telegraph Co., supra.

There appears, however, to have been no employer intimidation or coercion in the formation of this Union for it is quite clear that the men formed it: (a) after talking to the Regional Director in Texas of the N. L. R. B., who advised them that they could do so; (b) after making inquiries as to whether or not they could join one of the transportation unions; (c) and after visiting a meeting of a local union in the A. F. of L.

The deficiencies in the complaint, of which the Respondents complain, are without merit. We do not believe that it was the intention of Congress to require the strictness of common law pleading in either the charges or the complaint in such cases.

Let the order of the Board be enforced in its entirety.