### NATIONAL LABOR RELATIONS BOARD v. CLAUSEN et al.

### No. 10374.

United States Court of Appeals
Third Circuit.

Argued March 6, 1951.

Filed April 2, 1951.
Rehearing Denied June 8, 1951.

440

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel (Fannie M. Boyls, and Samuel M. Singer, all of Washington, D. C., on the brief), for National Labor Relations Board.

Irving Herman, Washington, D. C., for petitioner.

Conrad A. Falvello, Hazelton, Pa., for respondent.

Rocco C. Falvello, Hazleton, Pa., on the brief, for respondent-appellee.

Before MARIS, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The Labor Board here applies for enforcement of its order issued against respondent following a Section 10 hearing. National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C.A. §. 141 et seq. The alleged unfair labor practices occurred .at respondent's plant in Nescopeck, Pennsyl-

vania. It is conceded that respondent is engaged in interstate commerce.

The respondent's chief contention is that there was no substantial evidence to support the Board's finding that the respondent committed an unfair labor practice. The rule on which to judge the Board's conclusions is whether there was substantial evidence to support them on the record considered as a whole. Universal Camera Corporation v. Labor Board, 71 S.Ct. 456; Labor Board v. Pittsburgh Steamship Co., 71 S.Ct. 453.

The Board found that: (1) on July 6, 1948 when respondent's employees, who had been on strike, collectively applied for reinstatement, "Respondent applied a discriminatory basis for the selection of employees among its strikers to fill the remaining vacancies on its staff"; (2) after July 6, 1948, respondent continued to discriminate "* * * against applicants for employment because of their adherence to a union or because they have engaged in a protected concerted activity"; (3) employee Schloyer was discharged July 8, 1948 "* * * because of his purported union activities and thereby discouraging membership in a labor organization and participation in concerted activities".

The Board found as a fact that the charges in this matter were served on respondent no later than January 5, 1949. There is substantial evidence to support this on the record considered as a whole. There is no denial by respondent that the charges were served upon her by, at least, January 5, 1949. Under Section 10(b) of the Act "* * * no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made * * *." The alleged unfair labor practices stated in the complaint as amended at the hearing, and found by the Board, occurred on July 6, 1948 and thereafter and were within six months of the service upon respondent of the charges.

Respondent, Mrs. Clausen, and her two sons, who were in the Luzerne Company with her, became aware of a union organizational campaign among the company employees about the middle of March, 1948. From that time on the evidence justifies the conclusion that the unionization drive was vigorously opposed by the Clausens.

On March 18 and 20, five employees, active in union affairs, were discharged by respondent. On March 29, 1948, the union filed a petition for election with the Pennsylvania Labor Relations Board and on April 15, 1948, filed charges with that Board of interference, restraint and coercion and also of the discriminatory discharge in March of the five employees. A complaint was issued by the Board which later made a nisi finding that the discharges were discriminatory and that there had been interference, restraint and coercion. An election was held on May 12, 1948 and on August 18, 1948 a nisi certification of the union was issued. Additional charges filed with the State Board by the union on or about May 20, 1948 alleged the discharge of employee John Morgan to be discriminatory and also alleged interference, restraint and coercion. There was a hearing on those charges June 7, 1948. On July 28, 1948 there was a nisi decision holding the Morgan discharge to have been discriminatory and finding interference, restraint and coercion. On October 5, 1948 the Pennsylvania Board set aside its decisions in all three cases on the ground that respondent was engaged in interstate commerce. Other charges covering substantially the alleged conduct in the matter before us were filed by the union with the State Board on July 20, 1948. Those were dismissed on October 25, 1948 on the ground that respondent was engaged in interstate commerce.

On June 30, 1948 there was a strike in respondent's plant. It was basically for recognition and for better working conditions. A clique of five strikers formed during the strike. Those men had either been opposed to the union or were uninterested regarding it. On July 6, 1948 they declared themselves to be in favor of abandoning the strike and returning to work. Later that morning all of the strikers voted to abandon the strike and apply for their jobs. The Examiner found, and his find-

ing was approved by the Board, "* * * that this was unconditionally voted and * · * * unconditionally carried out that afternoon." That same day respondent rehired or arranged to rehire the five employees in the group above mentioned and one more person, Beathier Schloyer. Five new employees were taken on later that month and several others during August, September and October.

Nine of the original seventeen strikers had either returned or had been requested to return by July 6, 1948. Two of the others did not request reinstatement then or at any later time. The remaining six who requested reemployment and were not taken back are six of the seven complainants in this proceeding, respectively, Harry Kishbaugh, Sterling Kishbaugh, Sr., Lee Schell, Lester Roth, Henry Ertwine and Howard Yoder. Harry Kishbaugh is president of the union. Schell is vice-president. Sterling Kishbaugh, Sr. and Ertwine are committeemen. The evidence strongly indicates that all of these men were prominent in the union movement.

Schloyer, the seventh complainant, and the one striker outside of the group of five rehired on July 6th, had remained away from work on July 7th. As found by the Board, on the 8th he was asked by William Clausen, "Did the boys try to keep you from coming to work last night?" Schloyer admitted that such was the fact but that the plan had not worked. Clausen then discharged him stating that he had no cause to fear any union interference and that he was "* * * as bad as the rest of them."

■ There is ample evidence of the Clausen opposition to the unionization of their plant. The reemployment situation shows clearly that the employees favoring the union were consciously discarded for those who did not. Considered as a whole the record justifies the Board's conclusion that respondent did apply a discriminatory basis on July 6, 1948 in obtaining her employee quota and that as it found "* * * there was a marked failure to reinstate anyone known to be active in union leadership activities, and Respondent reinstated only men whom it knew or had reason to believe

were opposed to the Union or merely quiescent in going along with the union leadership." The reported cases support the Board's conclusions. See F. W. Woolworth Co. v. National Labor Relations Board, 2 Cir., 121 F.2d 658, 661, 662; National Labor Relations Board v. Sandy Hill Iron & Brass Works, 2 Cir., 165 F.2d 660, 662; National Labor Relations Board v. Chattanooga Bakery, Inc., 6 Cir., 127 F.2d 201, 204; Montgomery Ward & Co., Inc. v. National Labor Relations Board, 7 Cir., 107 F.2d 555, 559; National Labor Relations Board v. Bachelder, 7 Cir., 120 F.2d 574, 578, certiorari denied 314 U.S. 647, 62 S.Ct. 90, 86 L.Ed. 519; National Labor Relations Board v. Aladdin Industries, Inc., 7 Cir., 125 F.2d 377, 386, certiorari denied 316 U.S. 706, 62 S.Ct. 1310, 86 L.Ed. 1773; Hamilton-Brown Shoe Co. v. National Labor Relations Board, 8 Cir., 104 F.2d 49, 53; North Whittier Heights Citrus Ass'n. v. National Labor Relations Board, 9 Cir., 109 F.2d 76, 78–79, certiorari denied 310 U.S. 632, 60 S.Ct. 1075, 84 L.Ed. 1402; National Labor Relations Board v. Sifers, 10 Cir., 171 F.2d 63, 65–66.

The evidence also bears out the Board's finding that the Clausens continued their discrimination by not taking back the Kishbaughs, Roth, Ertwine, Yoder, Schell and Schloyer after July 6, 1948. Relatively speaking, there was considerable further hiring of employees; five later that same month, others in August, September and October, and all of the replacements in the same classifications as the barred union men. Respondent's testimony before the Pennsylvania Labor Board in connection with the question of rehiring any of the above men was stipulated as part of the record in this litigation. There, Mrs. Clausen said that she would not employ any of them because "* * * they all quit their jobs willingly." The strike of July 1, 1948 unquestionably was a legitimate concerted activity within the Act. Berkshire Knitting Mills Co. v. National Labor Relations Board, 3 Cir., 139 F.2d 134, 140. And the Board was well within the proofs in finding that respondent discriminated against the particular employees on the question of filling positions for

which they were available and thereby violated the Act. The discrimination in hiring, as found, reasonably tended to discourage membership in the union and was unfair labor practice. National Labor Relations Board v. Mackay Radio & Telegraph Co., 304 U.S. 333, 347, 58 S.Ct. 904, 82 L.Ed. 1381.

■ Regarding Schloyer, the Board held, as it could from the evidence, that his discharge was motivated by Clausen's belief that he had been influenced by the union and amounted to discrimination against him which in turn tended to discouragement of membership in the union. See National Labor Relations Board v. Peter Cailler Kohler Swiss Chocolatès Co., Inc., 2 Cir., 130 F.2d 503, 506; Firth Carpet Co. v. National Labor Relations Board, 2 Cir., 129 F.2d 633, 635; National Labor Relations Board v. Martin Bros. Box Co., 7 Cir., 130 F.2d 202, 205–206, certiorari denied 317 U.S. 660, 63 S.Ct. 59, 87 L.Ed. 531; Rapid Roller Co. v. National Labor Relations Board, 7 Cir., 126 F.2d 452, 460–461; Carter Carburetor Corp. v. National Labor Relations Board, 8 Cir., 140 F.2d 714, 718.

■ Respondent objects to the background evidence of circumstances prior to July 6, 1948. She urges that there can be no connection between those happenings and what occurred on July 6th and subsequently because the Board affirmed the Examiner's finding that the July 1 strike was economic and not brought about by unfair labor practice. Both the Board and the Examiner understood thoroughly that Section 10(b) prevented the issuance of a complaint founded on acts committed beyond the six months period but as the Board held regarding that section, "It does not foreclose the Board from accepting evidence of those events for the purpose of throwing light upon acts which happened within the 6-month period." We do not understand that respondent questions that interpretation of 10(b) but merely its application in the present problem. In any event we consider the Board sound in its holding that Section 10(b) enacts "a statute of limitations and not a rule of evidence." Axelson Mfg. Co., 88 N.L.R.B. No. 155.

And see National Labor Relations Board v. Itasca Cotton Mfg. Co., 5 Cir., 179 F.2d 504, 506; Superior Engraving Co. v. National Labor Relations Board, 7 Cir., 183 F.2d 783, 791.

■ Respondent also argues that the failure of those complainants who are officers of the union to comply with the filing provisions of the Act is fatal in these proceedings. The Labor Management Relations Act of 1947 by Section 9(f), (g) and (h) does prohibit investigation, issuance of a complaint, or certification by the Board at the instance of a labor organization unless there is on file with the Board a non-communist affidavit by each officer of the labor organization and a financial statement of the union in accordance with the specific language of the section. The charges in this suit are by six individual members of the union who individually seek relief. Respondent contends that the complainants are in reality representing the union and are endeavoring to evade the provisions of Section 9 because no financial statement of the union or non-communist affidavits of its officers were filed with the Board.

We cannot agree with this suggestion. The restrictions of the section are not imposed on the individual employees. It should be remembered that, as said by Judge Waller in National Labor Relations Board v. Schwartz, 5 Cir., 146 F.2d 773, 774, " * * * the National Labor Relations Act was passed for the primary benefit of the employees as distinguished from the primary benefit to labor unions * *." It is true, as the Board urges, that the relief here sought is by and for the individual complainants with any benefit accruing to the union being remote and unsubstantial. We agree with the Board that "Section 9(f), (g), and (h) does not affect these individuals in their right to file charges alleging violations of the Act." As was said very recently in National Labor Relations Board v. Augusta Chemical Co., 5 Cir., 187 F.2d 63, 64: "Because in practice the unions, as such, have dominated, and are dominating, the scene on which these dramas unfold, it may not be said that individual employees have no right to act

individually in asserting and vindicating their rights. To do so is to put the cart before the horse, to sublimate the agent above the principal, to make the tail wag the dog. * * * Granted that the disqualified union was active in assisting, indeed in directing, the employees in preparing their charges, it does not at all follow that the employees, by accepting that assistance, disqualified themselves. The saying, that a man cannot touch pitch and not be defiled, may not be thus applied."

Finally, respondent argues that because of the "important legal questions involved", the "voluminous record", and because "the evidence to support the confiscatory order of the Board is so meager and negligible", the refusal to allow oral argument on her exceptions to the Trial Examiner's October 7th report was a denial of due process.

There is no merit to this contention. As was said by the Supreme Court with respect to a similar administrative hearing under the Packers and Stockyards Act, 7 U.S.C.A. § 181 et seq., in Morgan v. United States, 298 U.S. 468, 481, 56 S.Ct. 906, 912, 80 L.Ed. 1288, "Argument may be oral or written. The requirements are not technical." When the Morgan case was again before the Supreme Court in 304 U.S. 1, 23, 26, 58 S.Ct. 773, 82 L.Ed. 1129, Chief Justice Hughes stressed that the all important element for such administrative proceedings is that there be a full, fair and adequate hearing. And see National Labor Relations Board v. Mackay Radio & Telegraph Co., supra. The allowance of oral argument on exceptions to a Trial Examiner's report is, by the Board's Rules and Regulations, Section 203.46(c), Series 5, effective 1947 within the discretion of the Board. 29 U.S.C.A. Appendix, § 102.46(c). Respondent did file a brief in support of her exceptions and the Board by its order of May 10, 1950 denied the request for oral argument "* * because the record, exceptions and brief, in our opinion, adequately present the issues and positions of the parties." There is not the slightest indication of any abuse of discretion in this action by the Board.

We are satisfied that the findings of the Board that respondent was guilty of the unfair labor practices outlined are supported by substantial evidence on the record considered as a whole. A decree for the enforcement of the Board's order may be submitted.