**NATIONAL LABOR RELATIONS BOARD**

v.

**RED ARROW FREIGHT LINES, Inc., et al.**

No. 12672.

United States Court of Appeals
Fifth Circuit.

May 14, 1954.

David P. Findling, Asso. Gen. Counsel, N.L.R.B., A. Norman Somers, Asst. Gen. Counsel, N.L.R.B., Louis Libbin, Atty., N.L.R.B., Julius A. Serot, Atty., N.L.R.B., Winthrop A. Johns, Asst. Gen. Counsel, N.L.R.B., George J. Bott, Gen. Counsel, Joseph I. Nachman, Washington, D. C., for petitioner.

Sam R. Sayers, Reagen Sayers, Ft. Worth, Tex., Jack Binion, Houston, Tex., Scott P. Sayers, Fort Worth, Tex., Rawlings, Sayers, Scurlock & Eidson, Fort Worth, Tex., of counsel, for respondents.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HUTCHESON, Chief Judge.

Filed September 13, 1951, by the National Labor Relations Board, petitioner in the above styled and numbered cause, against the corporate respondents named in the decree of this court entered May 1,

1950, the petition sought an order to show cause and a decree adjudging respondents in contempt.

Respondents denying and otherwise joining issue with the claims made in the petition, both petitioner and respondents were heard orally and by briefs, and this court filed an opinion [1] in the nature of a pre-trial memorandum and order in which, construing the invoked decree and defining and fixing the scope and limits of the inquiry, it appointed an examiner to take and report the testimony.

■ Reaffirming the uniform, the unwavering, position of this court, that the purpose of the statute was to protect not the rights of particular unions to obtain representation contracts—they have no such rights—but the rights of employees to be represented by a bargaining agent of their own choosing, we rejected the contention of the Board, that the matter for inquiry was whether UTE, whose formation and recognition the Board charged was in contempt of our decree, "is a successor to the Association in the sense that the employees who have selected UTE as their bargaining agent are the same employees who selected the Association as such." Stating, "We think this is not at all the issue but that it is whether the employees have selected UTE as their representative without interference, coercion, or persuasion by the respondents", we directed the examiner to confine the inquiry to the controlling issue in the case, whether UTE really represents the uncontrolled and uninfluenced choice of the employees of respondents, or whether, as was found to be the case with the Association, it was, or is, dominated, controlled, or influenced by the respondents; and membership in, and affiliations with, it were induced in whole or in part by the unlawful acts of responsible officers or agents of respondents.

The testimony has now been taken and returned into court, and the petitioner and respondents, except Brown Express,[2] which on October 10, or 12, 1951, shortly after the contempt proceeding was filed, ceased recognizing UTE and began to recognize the A. F. of L. Teamsters Union as bargaining agent for its employees, have appeared in argument orally and by briefs, and all matters at issue are before us for decision.

■ The question as to whether any or each of the three respondents who are continuing to recognize UTE should, because of its doing so, be found guilty of contempt of the order of this court, must, of course, be answered by determining whether, upon and by the testimony taken and reported by the examiner, its guilt is clearly established.[3]

Before proceeding to that inquiry and in order to a complete understanding of the matters presented for decision, a brief discussion of the enforcement proceedings which culminated in the decree, contempt of which is charged here, is desirable. In 1946, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, A. F. of L., which had been for sometime endeavoring without success to represent the employees of each of the respondents as bargaining agent, filed with

---

1. N. L. R. B. v. Red Arrow Freight Lines, 5 Cir., 193 F.2d 979.

2. As to this respondent, The Board, in note 32 at the end of its brief, thus advises us:

"As the Court previously was advised, both at the oral argument on the petition and in the brief submitted shortly thereafter, respondent Brown Express began to comply with the decree after these contempt proceedings were instituted. It has now complied and, except for possible costs, no further compliance action on the part of that company is required.

Of course, the evidence relating to Brown Express employees and to the participation by Brown Express in the incidents hereinabove described is part of the entire picture and remains material."

3. Humble Oil & Refining Co. v. National Labor Relations Board, 5 Cir., 113 F. 2d 85; Texas Co. v. National Labor Relations Board, 7 Cir., 119 F.2d 23; N. L. R. B. v. El Paso Electric Co., 5 Cir., 133 F.2d 168; N. L. R. B. v. Norfolk Ship Building & Drydock Co., 5 Cir., 195 F.2d 632; N. L. R. B. v. Aldora Mills, 5 Cir., 197 F.2d 265.

the Board eight unfair labor practice charges, each separately charging a different respondent, under case numbers 16–C–1240, 16–C–1212, 16–C–1214, 16–C–1215, 16–C–1216, 16–C–1217, 16–C–1218, and 16–C–1247. Each of these charges was directed at a rival independent and unaffiliated labor organization, known as National Association of Motorized Common Carrier Truck Line Employees, with which each of the respondents had a contract as bargaining agent of its employees, and each charged that the particular respondent named had aided and assisted the association, and had dominated and interfered with its operation and administration.

Alleging as to the respondent, Red Arrow Freight Lines, Inc., that it had formed the Association in 1937, and as to each of the other respondents that in 1944 and 1945, it had dominated and interfered with it, each of the charges sought to unseat the Association as bargaining agent. Though each respondent was thus separately and not jointly charged, the Board, over the vigorous opposition of respondents, ordered the charges consolidated for hearing and, pursuant to said order, issued one complaint against them all. The hearing following resulted in a lengthy report in which, dismissing so much of the complaint as alleged in substance that the respondents, other than Red Arrow, had formed the Association, the examiner found that Red Arrow had assisted in forming it, but that since the other respondents had not recognized it until some ten years later, they could not have formed it. He found, however, as to each of them, that it had dominated and interfered with the Association, and he recommended an order requiring each respondent to disestablish it as representative of its employees.

The Board, approving all the examiner's orders and findings except the dismissal order, found that each of the respondents, in recognizing the Association, had in effect formed it and, on the basis of the examiner's findings, the Board entered the order which underlies this proceeding.

Thereafter, upon a petition for enforcement of the order, this court, in an opinion in 180 F.2d 585, finding that there was no evidence that there had been any misuse of the Association by any respondent to further the interest of any respondent as against the interests of the employees who had selected it as their bargaining agent, found further that the record contained evidence sufficient to support the Board's findings that, in violation of the prohibition of the statute, each of the respondents had interfered with, or given support to, the Association, and, that on the basis of this conclusion, the Board was entitled to an enforcement decree.

It is against this background of separate cases consolidated for trial by the Board, over respondents' objections, that the charges of contempt against each respondent must be viewed and determined in the light of the evidence offered by the Board and by each respondent. Further and more important, as will be made more clear as we proceed, the testimony must be reviewed and our determination must be made in the light of the fundamental background that the real question here as to each of the three respondents, whose employees have chosen the independent union UTE, is whether the evidence establishes that that choice was not the free choice which the statute accords and secures to employees but was made under circumstances of compulsion, coercion, or other prohibited interference on the part of each or any of the respondents which would constitute a contempt by it of this court's decree.

We turn then to a consideration of the mass of testimony and exhibits offered in the course of making the voluminous record and to the many offers of proof by respondents which were rejected by the examiner but as to which, in accordance with the order appointing the examiner, a record was made showing the

testimony which, but for the exclusionary ruling, would have been given.[4]

In support of its charges, petitioner offered the testimony of fourteen witnesses. Of these: eight were employees or former employees at Dallas, Texas, of Brown Express, respondent against whom petitioner is not now requesting affirmative relief; three were former employees of respondent, Merchant Fast Motor Lines; one was a present and two were former employees of respondent, Red Ball Motor Freight, Inc.; none were or had been employees of Red Arrow Freight Lines.

Of the fourteen witnesses, all but one were members of the A. F. of L. Teamsters Union, a competitor of UTE for representation.

In rebuttal of the testimony of petitioner's witnesses and in support of its positive contention that it had not unlawfully or otherwise disobeyed the orders of this court, the respondents offered the testimony of many witnesses.[5]

---

4. Some of these which were incorrectly rejected are the testimony of:

"331 rank and file employees of respondents, that they did not know of any acts or series of acts which to their minds indicated domination, control, or influence by any of respondents, their executives or responsible agents over UTE or its operations.

"326 rank and file employees of respondents that they joined UTE of their own free will, choice, and accord, and were not persuaded to join UTE by any of the officers or supervisory employees of respondents.

"323 rank and file employees of respondents that they were never at any time influenced or induced, in whole or in part, by any officer or agent of any of the respondents, to join, or to continue membership in, UTE.

"323 rank and file employees of respondents, that UTE was the union of their choice at the time that they joined UTE, and it has continuously been the union of their choice since that date.

"320 rank and file employees of respondents, that they did not have any knowledge, and never had heard of any financial contribution, or the giving of anything of value, by any of the respondents, their executives, responsible officers, or agents, to UTE.

"11 supervisory employees of respondents, that they do not know of anyone who was ever at any time influenced, or induced, in whole or in part, by any officer or agent of any of the respondents herein, to join, or to continue membership in, UTE; that they do not have any knowledge of anyone who joined UTE or continued membership in UTE under the influence, coercion, domination, at the request of, or upon offer of reward from any of the respondents herein, their officers or agents; that they do not have

any knowledge, and have never heard of, any financial contribution, or the giving of anything of value, by any of the respondents, their executives, responsible officers, or agents, to UTE; that they do not know of anyone who was persuaded to join or to continue membership in UTE by any of the executives, responsible officers or supervisory employees of any of the respondents herein.

"Witness Craig, that prior to Jan. 1, 1950, Teamsters Unions had filed many complaints against the Association as being company dominated; that he had made many offers of consent elections to the National Labor Relations Board, Dr. Edwin A. Elliott, its Regional Director, and the National Organizers of Teamsters, to permit the members of the Association to vote in secret election or on a secret ballot for the purpose of determining their choice between Teamsters and the Association; that during the course of this trial, he had discussed with Almond Smith, president of UTE, the matter of consenting to an election, and that they now make the offer to Petitioner, on behalf of UTE, to have the members of UTE ballot in a secret election or on a secret ballot for the purpose of determining their choice between Teamsters and UTE.

"Witness Smith, that at the meeting of March 26, 1950, in Houston, no one was compelled or required to sign an application authorization or deduction order in UTE."

5. These witnesses were:
   (a) Three UTE officials, Craig, Kirkpatrick and Bailey;
   (b) Rank and file employees of: Brown Express—6; Red Arrow—5; Merchants—10; Red Ball—2;
   (c) Supervisory employees of: Red Arrow—1; Brown Express—3; Merchants—3; Red Ball—4.

The Board, in its brief, approaching the case as though this court's decree had the effect of preventing members of the association from taking steps to form a new union of their own choice, while at the same time authorizing a rival labor organization, the A. F. of L. Teamsters Union, to conduct an organizing campaign based upon the distribution among the employees of leaflets announcing this court's decision, argues in effect that Craig,[6] as president, and the employees of respondents, as members of, the Association, were under some kind of attainder which prevented them from choosing and forming an independent labor organization of their own, and thus resisting their organization by the A. F. of L.

Based upon this assumption, which runs directly counter not only to the provisions of the statute but to every pronouncement as to the rights of employees which this and other courts have from the beginning made,[7] and particularly to that of our pre-trial opinion and order in this case, the Board insists that its proof, indeed the admitted fact, that Craig and other officers and members of the Association were active in forming the new union, made out its case.

On their part, the three respondents, against whom the contempt order is sought, are here insisting that this is the sum and substance of the Board's testimony and urging upon us that it is therefore wholly inadequate as matter of law to make out even a prima facie case of contemptuous action on their part against any of them. Further, they urge upon us: that if any of the Board's testimony could in any aspect be regarded as pointing, or tending to point, to any prohibited or unlawful act on the part of any of the respondents, this testimony should not be credited; that the credible evidence in this case overwhelmingly establishes that the formation of UTE and its choice by the employees as their representative was in the case of each respondent the voluntary act and free choice of its employees; and that none of the respondents has done or said anything in connection therewith which can properly be held to be in contempt of this court's decree.

We agree with respondents that this is so. A consideration of the record as a whole shows: that the purpose of the proceedings which led to our decree, though not the purpose of our decree, was not only to unseat Association as representative but to seat the A. F. of L. Teamsters Union, in its stead; that this would have been a frustration of the real wish and desire of the employees; and that every act of the employees since the entry of the decree, instead of supporting the idea advanced by union and Board, that the employees were acting in the interest, for the benefit, and under the influence and coercion of their employers, shows the contrary. It shows, indeed, that each step they carefully took to form and join UTE, including their efforts to form it in secret so that the A. F. of L. and the Board could not again frustrate their real wish and desire to have an organization of their own, by making a charge and complaint that they formed the new union under the influence of the employers, was both voluntary and intelligent and represented not collusion with respondents but the complete absence of it.

The fact that, in the organization of UTE, the employees consulted Craig and

---

6. In its brief, the Board says: "As the Board's decision shows, Craig had been the Association's principal organizer, and from its embryo stage its guiding spirit. The Board's decision describes him as the motive power behind all Association policies and activities; 77 N.L.R.B. at page 900. The Association was known among the employees as the Craig Association."

7. Magnolia Petroleum Co. v. N. L. R. B., 5 Cir., 112 F.2d 545; Magnolia Petroleum Co. v. N. L. R. B., 10 Cir., 115 F.2d 1007; Humble Oil & Refining Co. v. National Labor Relations Board, 5 Cir., 113 F.2d 85; N. L. R. B. v. El Paso Electric Co., 5 Cir., 133 F.2d 168; N. L. R. B. v. Brown Paper Mill Co., 5 Cir., 108 F.2d 867.

used his services was not, and could not be an impeachment of their action and could not be considered as company dominated and inspired. Craig was not, and had not since 1948, been connected with any of the respondents. He was a skilled and competent organizer and operator of independent, as opposed to international, unions. It was, therefore, both natural and proper that employees who did not want the A. F. of L. to represent them and who had been satisfied with his administration of the Association, should look to him for advice and assistance in forming their own union and thereby avoiding being dominated by the A. F. of L. Union acting under the sponsorship of the Board.

The claim that the fact that the Association had not been dissolved at the time UTE was formed, indeed is not now dissolved, must be held to be a badge of fraud in the formation of UTE, is completely without basis in law or in fact. Quite to the contrary, the fact that the Association, instead of disbanding, continues to operate and function, is proof both of its reality and its independence.

Neither the Board nor this court has jurisdiction or power to order, neither ordered, the dissolution of the Association. All that either could do, all that either did, was to order its disestablishment *as representative of the employees of a particular respondent,* found to be guilty of interference with or domination over it.

In forming UTE, obtaining a charter for it and assisting in recruiting its members as members of UTE, neither Craig nor the other officers and organizers of UTE, including the members of the Association who joined UTE, violated this court's decree. Nothing in the decree enjoined or undertook to enjoin them. Indeed, to the extent that they provided the employees with a union of their own choice to represent them, they assisted in carrying out the decree, for by providing the employees with a union of their own, they made it possible for the prime purpose of the decree to be carried out. This purpose was that the employees should not be used as pawns by either the respondents or any union, including the A. F. of L., with which the evidence makes plain they did not want to affiliate.

The basic purpose, the effect of the decree was to permit the employees freely to make their own choice of a representative, or no representative, as bargaining agent, that is without interference, coercion, or other improper action on the part of the respondents. Instead, therefore, of finding that the act of respondents in recognizing UTE was in contempt of our decree, we are bound to find that, considering the fact that the respondents were still insisting, by continuing to litigate the matter at issue, that their contract with the association was not subject to be abrogated, they acted with commendable regard for the rights and wishes of their employees when, though they had a contract with the Association and the decree requiring them to disestablish the Association as representative had been fully superseded, they recognized UTE and contracted with it as representative of their employees upon a showing, which the record fully supports, that it had a majority.

Of the clear opinion that the evidence as to the formation, the choice of UTE as representative of its employees, and the recognition of it as such, completely fails to furnish the basis for a finding as to any of the respondents that it is, or has been, in contempt of this court's decree, indeed that it affirmatively shows the contrary to be true, we deny the petition of the Board to adjudicate any of the respondents in contempt, and dismiss the proceeding with no allowance of costs or expenses to either party, each party to pay the cost and expense incurred by it.