## NATIONAL LABOR RELATIONS BOARD v. KENNAMETAL, Inc.

### No. 10113.

United States Court of Appeals
Third Circuit.

Argued May 5, 1950.

May 24, 1950.

Mozart G. Ratner, Washington, D. C. (David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Thomas McDermott, National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

William B. Paul, Pittsburgh, Pa. (John C. Hill, Paul, Lawrence & Wills, Pittsburgh, Pa., on the brief), for respondent.

Before MARIS, GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This petition for enforcement of an order of the National Labor Relations Board

presents the question whether a single spontaneous brief work stoppage inspired by wage grievances is an activity protected by the National Labor Relations Act, 29 U.S.C.A. § 141 et seq.[1]

The facts were found by the Board and are not disputed. The respondent operates a plant at Latrobe, Pennsylvania. At the close of the war it discharged half of its employees and in effect reduced the wages of the remainder by downgrading them to lower paying jobs. The result was general dissatisfaction among the employees, who at the date of the events herein relevant were not unionized or represented by any formal collective bargaining agency. On January 31, 1947, seven or eight employees were gathered around a water fountain during working hours discussing a wage increase which had reportedly been won after a strike at a neighboring plant. Some one suggested that the group should immediately present its wage grievances to Philip McKenna, respondent's president. As the men headed toward the executive offices, their number swelled to approximately 100. In the office area, the men were ordered by the assistant plant superintendent to return to work at once. When they refused, the employees were told to proceed to the company cafeteria, where McKenna would speak to them.

Four days after the meeting in the cafeteria, respondent's officers decided to discharge Walter E. Saxton, Paul Bengel, Evan A. Lloyd and Kelley Hurd. The Board found, and respondent frankly concedes, that it was decided to dismiss the four men because they were the leaders in the work stoppage. The men involved were not told of the decision until a week after it had been made because it was feared that an earlier disclosure would embarrass a pending meeting between management and employee representatives chosen at the cafeteria session. Hurd, one of the four scheduled for discharge, was reinstated.

The Board found that respondent had committed unfair labor practices as defined in Sections 8(a) (1) and 8(a) (3) of the Act, 29 U.S.C.A. §§ 158(a) (1), 158(a) (3), and ordered reinstatement of the three discharged men with back pay. 80 N.L.R.B. 1481 (1948).

■ Section 8(a) (3) of the Act proscribes discriminatory discharges whose aim is the discouragement of membership in "any labor organization."[2] Respondent says that the group activity described above was not that of a labor organization and that it therefore could not have violated Section 8(a) (3). This argument is interesting but it crumbles when put against the broad language used in the statute in defining the term.[3] It seems perfectly clear to us that the employees who informally joined together to present their grievances in this case fall well within the statutory definition. We therefore agree with the Board that Section 8(a) (3) of the Act has been violated.

■ The Board also concluded that Section 8(a) (1)[4] of the Act had been violated. The respondent argues that the employees' conduct here was not of the sort protected by the statute. We disagree.

1. The complaint in this case was filed before the effective date of the Labor Management Relations Act amendments, 29 U. S.C.A. § 141 et seq., to the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. The statutory provisions which are relevant here, however, were not changed, and, as a matter of convenience, references will be to the Act as amended.

2. Sec. 8: "(a) It shall be an unfair labor practice for an employer * * * (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *."

3. The term "labor organization" is defined in Section 2(5) of the Act, 29 U.S.C.A. § 152(5), as "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances * * *."

4. Sec. 8: "(a) It shall be an unfair labor practice for an employer * * * (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 [section 7, infra] of this title * * *."

What occurred in this case was certainly a concerted activity for the purpose of collective bargaining, the kind of activity which is expressly protected by Section 7 of the Act.[5] That the employees suddenly dropped their tools and insisted upon presenting their grievances during working hours does not detract from the lawfulness of their conduct. Certainly the statute would have protected them against interference or coercion if instead of insisting upon immediate discussion of their demands they had then and there left the plant and formed a picket line outside. In fact, what the workmen did was more reasonable and less productive of loss to all concerned than an outright strike.

The language of the Act does not require and its purposes would not be served by holding that dissatisfied workmen may receive its protection only if they exert the maximum economic pressure and call a strike. Our conclusion that a spontaneous work stoppage like this one is protected by the Act is in accord with Gullett Gin Co. v. N.L.R.B., 5 Cir., 1950, 179 F.2d 499; Carter Carburetor Corp. v. N.I.R.B., 8 Cir., 1940, 140 F.2d 714, 717-718.

The employer relies upon two decisions to support his contention that the employee activity here is not sanctioned by the Act. We think, however, that neither is apposite. One of them, International Union, U.A. W., A. F. of L., Local 232, v. Wisconsin Employment Relations Board, 1949, 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651, holds that a union stratagem of calling recurrent or intermittent unannounced stoppages to win unstated ends is not a protected activity and a state may constitutionally legislate against it. Cf. comment in International Union, etc., v. O'Brien, 70 S.Ct. 781. The U.A.W. decision does not hold that a single spontaneous work stoppage such as we have here is unlawful.

The respondent also relies upon that part of this Court's decision in N.L.R.B. v. Condenser Corp. of America, 3 Cir., 1942, 128

F.2d 67, 77, which deals with the discharge of employee Marion Panzarella. There we held that "Employees cannot insist that their demands be met in the middle of a working day, when the employer has promised to deal with them as a group at the end of the day." The employees in the Condenser case had apparently acquiesced to the arrangement suggested by the employer and then without reason changed their minds. The promissory element is not present here.

This disposes of the legal points raised and further detailed discussion is undesirable. What the Ninth Circuit said a decade ago is even clearer now. "* * * the time has come when the fundamentals underlying the Wagner Act need not be the subject of treatises in every opinion * * for enforcement * * *." N.L.R.B. v. Tovrea Packing Co., 9 Cir., 1940, 111 F.2d 626, 630.

The order will be enforced.

---

5. Sec. 7: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection * * *."