## NATIONAL LABOR RELATIONS BOARD v. J. I. CASE CO., BETTENDORF WORKS.

### No. 14483.

United States Court of Appeals
Eighth Circuit.

Sept. 16, 1952.

Arnold Ordman, Washington, D. C., (George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Assistant General Counsel, and Walter F. Hoffmann, Washington, D. C., on the brief), for petitioner.

O. S. Hoebreckx, Milwaukee, Wis. (Robertson & Hoebreckx, Milwaukee, Wis., on the brief), for respondent.

Before SANBORN, JOHNSEN and COLLET, Circuit Judges.

JOHNSEN, Circuit Judge.

Enforcement is sought of an order issued by the National Labor Relations Board against respondent, 95 NLRB No. 14.

The Board found that respondent had violated section 8(a) (1) and (3) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 158(a) (1) and (3), in discharges made by it of three employees, and in layoffs imposed by it upon two other employees for a two-day period. The three employees discharged were officers or stewards of a union existing in the plant, and the two employees laid off were union members.

Cease and desist provisions were entered as to each of the two statutory subsections found to be violated, and reinstatement and backpay requirements, as applicable to each of the employees, were also imposed. All of these parts of the Board's order are attacked here by respondent.

The discharges and layoffs involved grew out of an attempt one noon by the three employees discharged to instigate a walkout from the plant of all union employees, because of the previous firing that morning of a union steward. The firing of this steward, however, was not shown to have had a union basis, nor did the Board so find. The attempted walkout therefore amounted simply to a protest against the discharge generally of a fellow-union employee.

The three employees who were the ringleaders of the walkout attempt had made known their plans to some of the other employees during the lunch hour in the plant cafeteria. They left the cafeteria after most of the employees had returned to their stations and instituted a march through several aisles of the plant, expecting that the other employees would join them. Some sporadic accretions occurred, followed by withdrawals, but at no time during the course of the march did there exist a phalanx of more than 12 or 15 persons, out of the plant's 2,000 employees.

When the leaders reached a point near their own work stations, they discovered that they were being accompanied by only the two employees laid off. They accordingly disbanded and returned to their work. Their efforts had consumed approximately 15 minutes of regular working time.

The reason given by the employer for the discharge of the three ringleaders was that they had "walked off job without the permission of foreman and attempted to incite a plant walkout." The ground stated for the layoff of the other two employees

was "helping and participating in unlawful walkout."

The Board appraised the situation as having represented and amounted, in its elements, to nothing more than "concerted activities, for the purpose of * * * mutual aid or protection", within the purview of section 7 of the Act, 29 U.S.C.A. § 157, and accordingly held that the discharges and layoffs had constituted unfair labor practices. Under our decision in Carter Carburetor Corp. v. N. L. R. B., 8 Cir., 140 F.2d 714, 718, and the cases there cited, on the object, scope, attributes and consequences of the activities involved, the Board was entitled so to hold in the situation presented. As our opinion in that case states, "Section 7 gives employees the right 'to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection.' This 'mutual aid' and 'concerted activities' include, we think, the right to join other workers in quitting work in protest over the treatment of a coemployee, or supporting him in any other grievance connected with his work or his employer's conduct."

And since such a protest might properly take the general form of a strike, it also necessarily would be privileged to be asserted in a lesser form, such as a temporary work stoppage or other controlled demonstration, carried on within bounds and under conditions which could not be declared to be legally unreasonable as a matter of particular plant-situation. Cf. N. L. R. B. v. Kennametal, Inc., 3 Cir, 182 F.2d 817, 19 A.L.R.2d 562; N.L.R.B. v. Globe Wireless, Ltd., 9 Cir., 193 F.2d 748. As said in the Kennametal case, 182 F.2d at page 819, 19 A.L.R.2d 562, "The language of the Act does not require and its purposes would not be served by holding that dissatisfied workmen may receive its protection only if they exert the maximum economic pressure and call a strike."

Nor does it matter under the Act whether such concerted activities have or have not a union purpose or relationship —except possibly as they may involve action on the part of persons subject to the provisions of a collective bargaining agreement between a union and the employer, which action is expressly or inherently violative of that agreement, and which is devoid of all union sanction. See Joanna Cotton Mills Co. v. N. L. R. B., 4 Cir., 176 F.2d 749, 752, 753; N. L. R. B. v. Phoenix Mutual Life Ins. Co., 7 Cir., 167 F.2d 983, 988, 6 A.L.R.2d 408. Of course, no such concerted activities are entitled to take the form of an inside seizure and an exercised control by the employees of the employer's business, such as an attempt to remain on their jobs and perform only such tasks as they choose, or otherwise to presume to conduct the operations of the business on their own terms. Cf. C. G. Conn, Ltd. v. N. L. R. B., 7 Cir., 108 F.2d 390, 397; N. L. R. B. v. Montgomery Ward & Co., Inc., 8 Cir., 157 F.2d 486, 496; Home Beneficial Life Ins. Co., Inc., v. N. L.R.B., 4 Cir., 159 F.2d 280, 284. But none of these inherent qualifications or limitations is involved in the present situation.

As previously stated, the Board was entitled to hold, as it did, that the discharges and layoffs involved had been violative of section 8(a) (1) of the Act. The violation was one which reached to the residual depth of the section—"other mutual aid or protection" generally. The use of this catchall expression in the statute would seem to suggest that the preceding particularization therein of some of the possible forms or objects of concerted activities was at least as much intended to insure the comprehensiveness of the coverage of the term "concerted activities" as to characterize or distinguish one form of concerted activity from another, in relation to any interference, restraint or coercion on the part of an employer. On this basis, we think that respondent's violation of the broad "other mutual aid or protection" provision entitled the Board to include in the cease and desist provisions of its order a prohibition against violation of those particular things which were set out as constituting subjects of possible concerted activities and which represented component parts of the general fundamental right. But even if the enumeration in the section had a purpose beyond this, it seems to us that a disposition to violate the broadgauged residuum of "other mutual aid or

protection" could also be appraised by the Board for remedial ends as being indicative in some particular situation of a purpose, which the Board found here, to curb, as much in whole as in any specific respect, "the lawful concerted activities of the Respondent's employees." Respondent is therefore not, in our opinion, entitled to have set aside or modified here the cease and desist provisions of paragraph 1(b) of the Board's order.

The Board further held, as has been noted, that the factual situation detailed also constituted a violation by respondent of section 8(a) (3) of the Act, relating to "discrimination in regard to hire or tenure of employment * * * or condition of employment to encourage or discourage membership in any labor organization".

The attempted walkout had of course been undertaken as a protest by union members against the discharge of a fellow-union employee. We cannot however find any basis of circumstance or testimony in the record to warrant an inference that the employer would not just as promptly have made the discharges and layoffs, had the situation been one in which the demonstration had occurred on the part of non-union employees, or that the employer's disciplinary action reasonably would be likely to create a belief in the minds of the employees that union targeting was involved. Union hostility or interference with unionization efforts were not proved against the employer. Charges of that nature had been made in the complaint, but these were dismissed by the Board for want of any credible evidence to substantiate them. Moreover, the union already had an established existence in the plant and had been recognized by the Board as having a majority of the employees as members, although it was not at the time of the incident involved entitled to invoke the provisions of the National Labor Relations Act, because of the failure of the officers of its parent organization to comply with the requirement of section 9(h), as amended, 29 U.S.C.A. § 159(h) for filing non-communist affidavits. See N. L. R. B. v. J. I. Case Co., Bettendorf Works, 8 Cir., 189 F.2d 599. This qualification, however, was subsequently made, and the charges on which the complaint herein was issued had been brought by the union itself.

The test which must be applied to the situation is one which we have only recently emphasized—"There · can be no violation of (section 8(a) (3)) unless the conduct complained of can have the proximate and predictable effect of encouraging or discouraging membership in a labor organization." N. L. R. B. v. Webb Const. Co., 8 Cir., 196 F.2d 702, 706. And that proximate and predictable effect, as a basis for a finding of violation, must have at least some evidentiary foundation in probative circumstances or testimony. Cf. N. L. R. B. v. International Brotherhood, 8 Cir., 196 F.2d 1. It must be kept in mind that what is now being considered is not a question of the latitude of judgment which the Board may exercise in remedy for a particular violation but whether there exists any basis for a finding of a particular violation as a fact. Not much evidentiary basis, to be sure, is required for a Board's finding, but there must at least be something on which an inference can be said to be rationally predicated, in a consideration of the record as a whole.

The Board's finding here of violation of section 8(a) (3), as an evaluation that the discharges and layoffs involved would discourage union membership, seems to us to amount simply in the situation to an attempted holding · that any wrongful discharge of a union employee, regardless of whether it bears any proximate relationship to his union membership or not, is entitled to be found to be a violation of section 8(a) (3), as being likely to discourage union membership. For example, the Board goes the length of arguing in its brief that, "At the very least, it (the action of discharge and layoff) would seriously discourage the unionism of the five employees affected"—an argument which is as much capable of being thus abstractly made in one situation of discharge as in another.

We do not believe that the mere discharge of a union member, which happens to be wrongful on some other ground under the Act but which has been made

without the existence or any reasonable implication of a union basis or motive, is entitled, without more, to be found to constitute a violation of section 8(a) (3). Some color of setting or special circumstance, we think, must ordinarily exist in the particular situation which reasonably gives the discharge a union and not a mere general connotation and which is likely to have a curbing union effect. Here, as we have said, it seems plain that the employer's action at the time would have been the same against any employees who attempted to instigate a walkout, whether they were union or non-union members, and whatever the purpose of their protest might be, and that the union situation in the plant was such that the employees reasonably could not have understood the incident otherwise. To say in these circumstances that the employer's action would have the effect of discouraging union membership in the plant seems to us too remote and speculative to be possessed of any legal substance.

The Board is accordingly, in our opinion, not entitled to have enforced here the cease and desist provisions of paragraph 1(a) of its order made in relation to section 8(a) (3) of the Act.

■■■ As to the requirement of reinstatement and backpay imposed, the Board's power to so make direction against an employer, in any situation of unfair labor practice under the Act is not open to question. Orders of reinstatement and backpay are as much entitled to be made for discharges constituting violations of section 8(a) (1) as for those violative of section 8(a) (3). Section 10(c) of the original Act gave authority generally to the Board to make cease and desist orders as to any unfair labor practice in which the employer was found to have been engaged, "and to take such affirmative action, in-

cluding reinstatement of employees with or without back pay, as will effectuate the policies of this Act." 49 Stat. 454.

And this power to require reinstatement and backpay generally cannot be said to have been given any sectional application or limitation by the provisions of the Taft-Hartley Act, 61 Stat. 136, 147, 29 U.S.C.A. § 160(c). That Act contained a reenactment of this general power of the original Act and then added a proviso that, "Provided, That where an order directs reinstatement of an employee, back pay may be required of the employer or labor organization, as the case may be, responsible for the discrimination suffered by him". This plainly was intended merely to make an express extension of the power of the Board to order backpay, to include labor organizations, as well as employers, where they engaged in unfair labor practices under the Act. The use of the term "discrimination" in the proviso is therefore casual description only, and not an injected limitation, in an attempt to make the Board's power to order reinstatement and backpay against an employer exercisable thereafter solely for violations of section 8(a) (3).

While the Trial Examiner here made discussion of his recommendation of reinstatement and backpay in connection with the violation found by him of section 8(a) (3), and the Board made general adoption of his report, the order of reinstatement and backpay entered by the Board was in general form and was intended, we think, as it was entitled, to have remedial application to the whole situation.

On the basis of what has been said, enforcement will be granted of all of the provisions of the Board's order except paragraph 1(a), the enforcement of which paragraph is in the situation denied.