**KITTY CLOVER, Inc.**

v.

**NATIONAL LABOR RELATIONS BOARD.**

No. 14833.

United States Court of Appeals, Eighth Circuit.

Nov. 30, 1953.

---

1. See, however, Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461.

2. Bayless v. United States, 9 Cir., 141 F.2d 578.

Clarence T. Spier and William C. Spire, Omaha, Neb. (Spier, Ellick & Spire and David W. Swarr, Omaha, Neb., on the brief), for petitioner.

Frederick U. Reel, Washington, D. C. (George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. Gen. Counsel, and Nancy M. Sherman, Washington, D. C., on the brief), for respondent.

Before SANBORN and THOMAS, Circuit Judges, and HARPER, District Judge.

SANBORN, Circuit Judge.

The petitioner asks for the review and reversal of an order of the National Labor Relations Board dated April 8, 1953 (103 N.L.R.B. No. 127). The Board asks for the enforcement of its order.

In a proceeding under Section 10 of the National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C.A. § 151 et seq., the Board determined that the petitioner, which has a plant in Omaha, Nebraska, and makes and sells potato chips and popcorn, had during 1951 violated Section 8(a)(3) of the Act, 29 U. S.C.A. § 158(a)(3), (1) by suspending one of its employees and discharging three others because of their activities on behalf of United Packinghouse Workers of America, C.I.O., a labor union, (2) by discharging forty-eight of petitioner's employees who struck in protest against the discharges, and (3) by refusing the application of some of the strikers for reinstatement. The Board also determined that, by these acts and other conduct, the petitioner had interfered with, restrained and coerced its employees in the exercise of their rights to self-organization and to engage in concerted activities, in violation of Section 8(a)(1) of the Act, 29 U.S.C.A. § 158(a)(1).

The Board's order required the petitioner to cease and desist from discouraging membership in the Union or other labor organization by discriminating with respect to employment, and from in any other manner interfering with the rights of petitioner's employees. The order also required the petitioner to offer reinstatement to seventeen employees who, the Board found, had been discriminatorily discharged and not offered reinstatement, and to make whole for loss of pay forty-nine employees who had engaged in the strike.

The issues before the Board were whether the suspension of the one employee and the various discharges of others were the result of the union affiliations and protected activities of the employees involved, as charged by the General Counsel of the Board, or were the result of other causes, as asserted by the

petitioner, and whether the petitioner had or had not engaged in interrogation and surveillance of its employees with respect to their union affiliations and activities.

In its brief the petitioner asserts that the issues presented to this Court are:

"(1) Whether or not the discharges of Moore, Gamerl, and Galus were for good cause and not for union activity;

"(2) Whether or not the suspension of Rose Bell was for good cause and not for union activity;

"(3) Whether or not the discharges of July 19, 1951, were for good cause and not an unfair labor practice against employees engaged in a protected concerted activity."

What the petitioner means to assert is, of course, that the question before this Court is whether there was an adequate evidentiary basis for the Board's determination that the suspension and the discharges were discriminatory and constituted unfair labor practices.

This Court cannot retry and redetermine issues of fact which have been tried and determined by the Board. National Labor Relations Board v. Minnesota Mining & Manufacturing Co., 8 Cir., 179 F.2d 323, 325; Hartsell Mills Co. v. National Labor Relations Board, 4 Cir., 111 F.2d 291, 293. The Board, as has frequently been pointed out, is the judge of the facts, the credibility of the witnesses, and the weight of evidence, and may draw inferences from circumstantial, as well as direct, evidence. It is only when the Board's determination is without adequate support in the evidence or is beyond the scope of the Board's statutory authority that this Court may set aside an order or refuse its enforcement.

In the case of National Labor Relations Board v. Minnesota Mining & Manufacturing Co., supra, at page 325 of 179 F.2d, this Court said:

"The only question requiring consideration is whether there is an adequate evidentiary basis for the findings and order of the Board. We think that the time has come to abbreviate, so far as possible, opinions in these National Labor Relations Board cases. A detailed review of the evidence is ordinarily futile. The parties are familiar with it, and others are not interested unless some novel question is presented. Almost all of these cases fall into some familiar pattern. The limited scope of our power of review has often been repeated."

The instant case is of a type entirely familiar to this Court, namely, one in which union members and union supporters are discharged or laid off by an employer during an organizational campaign, the union claiming that the discharges or suspensions were the result of union affiliations or activities, and the employer asserting that good cause existed for its action.

The main events which gave rise to this controversy are not in dispute. All of them took place in 1951. In chronological order, they were as follows: May 26, or about that date, a movement to have the Union organize petitioner's plant was initiated. On or about June 1, the Union held its first organizational meeting. June 4, Moore and Gamerl, employees of the petitioner who had been active in the union movement in petitioner's plant, were discharged. On the same day, the Field Representative of the Union, wrote petitioner that the Union represented a majority of petitioner's employees. He requested a meeting to discuss wages and working conditions. June 7, the petitioner wrote the representative of the Union, questioning his statement that it represented a majority of the petitioner's employees, and declining his request for a meeting. June 12, the Union filed a representation petition with the Regional Office of the Board. June 19, Rose Bell, an employee of petitioner who had joined the Union and had actively participated in the union movement, was suspended for one week. July 16, Galus, an employee of petitioner who had initiated the union movement in the plant, was discharged. Alberta Sogge, another employee who

had joined and assisted the Union, was also discharged on that day. July 18, a hearing was held on the representation petition of the Union. On the same day, the Union held a meeting, at which it was proposed to protest the discharges of Galus and Alberta Sogge. July 19, thirty-five of petitioner's employees, wearing Union buttons, left their work in the plant during working hours and unsuccessfully sought an interview with Mrs. Lou C. Lippold, Secretary-Treasurer of petitioner. She refused to meet with them as a group, and, upon their refusal to return to work, they were discharged. These employees and others went on strike. July 30, a committee representing all the striking employees, forty-nine in number, presented to petitioner an offer to return to their jobs. October 4, the petitioner wrote thirty-two of these employees offering reinstatement. Seventeen were not offered reinstatement. October 15, fifteen of the employees who had been offered reinstatement responded and were employed by the petitioner.

 We have read and considered the entire record in this case, and have reached the conclusion that the findings and order of the Board are supported by substantial evidence. The case, in principle, differs in no controlling respect from other cases of a similar type in which the findings of the Board have been held to be within the evidence. See and compare, Carter Carbureter Corporation v. N.L.R.B., 8 Cir., 140 F.2d 714; N.L.R.B. v. Winona Knitting Mills, Inc., 8 Cir., 163 F.2d 156; N.L.R.B. v. Dixie Shirt Co., Inc., 4 Cir., 176 F.2d 969; N.L.R.B. v. Minnesota Mining & Manufacturing Co., supra, 179 F.2d 323; N.L.R.B. v. Kennametal, Inc., 3 Cir., 182 F.2d 817, 19 A.L.R.2d 562; N.L.R.B. v. Ozark Hardwood Co., 8 Cir., 194 F.2d 963; N.L.R.B. v. J. I. Case Co., Bettendorf Works, 8 Cir., 198 F.2d 919; Modern Motors, Inc., v. N.L.R.B., 8 Cir., 198 F.2d 925; N.L.R.B. v. Brown & Root, Inc., 8 Cir., 203 F.2d 139, 147. In the case last cited, this court said: "Questions of motive, intent, good faith, and the like, if at all doubtful, are questions of fact, and men may reasonably be presumed to intend the natural and necessary consequences of what they do."

It is our conclusion that the controlling issues in this case were, under the evidence, issues of fact for the Board, and are not issues of law for this Court.

The Board's request for enforcement of its order is granted.