INDEPENDENT CIRCULATION UN-ION, Plaintiff,

v.

ITEM COMPANY, Defendant.

Civ. A. No. 7634.

United States District Court
E. D. Louisiana,
New Orleans Division.

June 11, 1958.

**WRIGHT, District Judge.**

Invoking the jurisdiction of this Court under Section 301 [1] of the Labor Management Relations Act, the Independent Circulation Union has brought this suit to compel arbitration of a dispute concerning the discharge of one Sherman English, an employee of the defendant newspaper and a member of the Union. Defendant excepts to the jurisdiction under Section 301 of the Act alleging that the relief sought is personal to Sherman English, the employee, and, therefore, does not involve an obligation running to the Union. The Item also maintains that

[1]. 29 U.S.C.A. § 185.

the plaintiff is not a labor organization within the intendment of the Act and, consequently, the contract in suit is not subject to enforcement under Section 301. Finally, the Item argues that the plaintiff has no standing to sue on the contract because it was not a party thereto.

The contract was entered into between The Item Company and "the undersigning majority group of independent City Branch Managers and Circulation Clerks." It is a typical bargaining agreement providing for wages, conditions of employment, sick leave, vacation and severance pay. It also sets up the customary grievance procedure providing for the submission of grievances in writing by the complaining party to the other, as well as the mechanics for settling those grievances. If grievances are not settled within 35 days, either party may request arbitration, the award therefrom being final and binding. The contract also provides that "Any city branch manager or circulation clerk, * * * may become a party to this agreement by giving the Publisher written notice * * *."

The contract was signed by some 25 employees of the defendant and no reference is made therein to the plaintiff, Independent Circulation Union, as such. The evidence shows, however, that the plaintiff union, through one of its committees, negotiated the contract with the company on behalf of all the employees signatory thereto. The evidence further shows that the company recognized the Union as a party to the contract by negotiating with its officials, by checking off the Union dues from the employee members thereof, and by conducting grievance proceedings with the Union pursuant to the contract. On the basis of this evidence, the plaintiff argues that while the contract was signed individually by the 25 employees, those 25 employees were, under the Act, a labor organization and that labor organization was in fact the Union, plaintiff herein, and that it is the Union's right to arbitration under the contract which is being sought to be enforced in these proceedings. The Union thus seeks to bring this case within the union right doctrine of Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, rather than the personal right doctrine of Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 488, 99 L.Ed. 510.

It is now clear, as plaintiff contends, that a union under Section 301 of the Act has the right to have enforced the provisions of a bargaining agreement with respect to arbitration of grievances even where those grievances involve the personal rights of the employees. Textile Workers Union of America v. Lincoln Mills of Alabama, supra; Goodall-Sanford, Inc., v. United Textile Workers of America, A. F. L., Local 1802, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031; General Electric Co. v. Local 205, United Electrical, Radio and Machine Workers of America, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028. Under those circumstances, it is said that the specific enforcement of the arbitration provisions of a collective bargaining contract involves "an obligation running to a union—a union controversy—and not uniquely personal rights of employees sought to be enforced by a union." Textile Workers Union of America v. Lincoln Mills of Alabama, supra, 353 U.S. at page 460, 77 S.Ct. at page 919. It is also clear that the definition of labor organization under the Act is very broad [2] an/.

---

2. Section 2(5) of the Act (29 U.S.C.A. § 152(5)) reads:

"The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

has been construed even more broadly by the courts.[3] So that now, almost any group which negotiates with the management concerning wages and working conditions of employees is a labor organization.

 The employee group in whose behalf the contract in suit was negotiated unquestionably is a labor organization within the intendment of the Act. The language of the contract, phrased in terms of each individual employee as a party, apparently was intended by the company to bring the contract within the Westinghouse doctrine. But language and legal strategem must give way to reality. Artful phrasing can not change a labor organization into something other than it is under the Act, nor preclude this plaintiff from seeking enforcement of its bargaining agreement in this Court under Section 301. The employee group which signed the contract was a labor organization within the meaning of the Act, and the right to arbitration which it is now seeking to enforce is an obligation running to the Union and not a personal right as was sought to be enforced in Westinghouse.

 Defendant's suggestion that the plaintiff here has no standing to sue because it is not a party to the contract is without merit. Perhaps it would have been more appropriate to have brought this suit in the name of the "majority group of independent City Branch Managers and Circulation Clerks" rather than in the name used by the plaintiff. But the facts show that the "Independent Circulation Union" and the "majority group of independent City Branch Managers and Circulation Clerks" are one and the same labor organization. Moreover, the defendant has dealt with this labor organization as a party to the contract in the name "Independent Circulation Union." It is a little late in the day now to say that that name is a stranger to the contract.

*Judgment for plaintiff.*

3. National Labor Relations Board v. Standard Coil Products Co., 1 Cir., 224 F.2d 465, 51 A.L.R.2d 1268, certiorari denied 350 U.S. 902, 76 S.Ct. 180, 100 L. Ed. 792; National Labor Relations Board v. Sharples Chemicals, 6 Cir., 209 F.2d 645; Indiana Metal Products Corp. v. National Labor Relations Board, 7 Cir., 202 F.2d 613; National Labor Relations Board v. Kennametal, Inc., 3 Cir., 182 F.2d 817, 19 A.L.R.2d 562; Gullett Gin Co. v. National Labor Relations Board, 5 Cir., 179 F.2d 499, reversed on other grounds 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337; National Labor Relations Board v. American Furnace Co., 7 Cir., 158 F.2d 376.