NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

SERV–AIR, INC., Respondent.

No. 9888.

United States Court of Appeals
Tenth Circuit.

Oct. 14, 1968.

**364**

Paul J. Spielberg, Washington, D. C., (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Elliott Moore, Atty., National Labor Relations Board, were with him on the brief), for petitioner.

Frank Carter, Enid, Okl. (Otjen, Carter & Huddleston, Enid, Okl., of counsel, were with him on the brief) for respondent.

Before LEWIS, BREITENSTEIN and HICKEY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Respondent Serv-Air, Inc., suspended seven employees because of a work stoppage. The Board held that the work stoppage was a protected concerted activity and ordered reimbursement of the lost pay.[1] This petition seeks enforcement of that order.

The Company provides various services, including fire protection, at Vance Air Force Base near Enid, Oklahoma.[2] In 1964, Smoke-Eaters Lodge 898, International Association of Machinists, AFL-CIO, was certified as the bargaining representative of the firemen. During the period with which we are concerned no collective bargaining agreement was in effect but there was a limited agreement that the firemen would not walk out without first giving 12 hours notice to the Company.

A dispute arose between the firemen and the Company over the scheduling of fire-protection training on Saturday afternoons.[3] On Wednesday, February 23, 1966, representatives of the Company and Union met and among other things discussed Saturday training drills. The Company suggested that the Union present a plan for modifying Saturday afternoon training and also said that the training scheduled for the following Saturday would not be affected. On Friday, the fire chief told his superiors of a report that the men would refuse

---

1. See 162 N.L.R.B. No. 127.

2. The operations of the Company are more fully described in Serv-Air, Inc. v. National Labor Relations Board, 10 Cir., 395 F.2d 557.

3. Fire protection was furnished by staggered crews seven days a week on a 24-hour day basis.

to drill on Saturday afternoon. He was directed to terminate the men "if they absolutely refused to work."

The Saturday training was scheduled from 8:00 A.M. to 11:00 A.M. and from 1:30 P.M. to 3:00 P.M. At about 11:30 A.M. the assistant fire chief, with the consent of all the participating crews, extended the drilling through the lunch hour to complete the training early. The fire chief, on hearing of this extension by radio, countermanded the order and insisted that the schedule be maintained.

Shortly thereafter, the fire chief came to the central station and met with the men. They endeavored to present a grievance which they had written out during the lunch break but the chief refused to receive it. He said that he would hear it on the following Monday and ordered them back to work. One crew did so but another continued the discussion. The chief promptly discharged seven of the men. The men then told the chief that they would drill under protest if he would meet with them on Monday. The chief replied that he would accept no conditions and that they were fired. A superior came on the scene and the discharge was changed to a two-week suspension.

Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, provides that employees shall have the right to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection." Section 8(a) (1), 29 U.S.C. § 158(a) (1), declares that an interference with a right guaranteed by § 7 is an unfair labor practice. The question is whether the concerted activities of the firemen were within the protection afforded by § 7.

■ The record shows a work stoppage but not a walkout. There was no refusal to supply fire protection to the air base. Substantial evidence supports the Board's finding that the purpose of the work stoppage was "to present and discuss the grievance." [4]

■ No written grievance procedure had been established. In presenting the grievance to the chief, the men were following the informal procedure which theretofore had been in operation. The chief's rejection of the grievance on the ground that he was not then on duty was unjustified. He was at the fire station issuing orders. We agree with the Board that the training "was not of such urgency as to deprive the firemen of the right to interrupt work to present their grievance."

This case is not like National Labor Relations Board v. Condenser Corporation, 3 Cir., 128 F.2d 67, 77. There the company promised, and the men acquiesced in, later discussions and the subsequent stoppage affected the work of others. National Labor Relations Board v. Kennametal, Inc., 3 Cir., 182 F.2d 817, 818, 19 A.L.R.2d 562, is more in point. It held that in the absence of an established grievance procedure a spontaneous work stoppage to present a grievance was a protected activity.

■ We agree with the Board that no violation of the Union's agreement to give 12 hours notice before walking out occurred. The purpose of the agreement was to give the Company adequate notice so that it could secure replacements to assure uninterrupted fire protection. In the situation presented there was no walkout and no refusal to furnish fire protection.

The Company argues that the record shows no discrimination against union members but such argument misses the point. Discrimination is a § 8(a) (3) violation on which the Board made no finding. Interference with a protected activity violates the Act.

■ The Company also says that the suspensions were for insubordination and did not violate the Act. Testimony credited by the Examiner was that the

---

4. The Examiner's findings, upheld by the Board, also stated that "there is insufficient evidence to conclude that the firemen would not have trained whatever Moxley (the fire chief) had done." The record sustains this finding.

employees were not refusing to drill but desired a short time to discuss the grievance. The Board was justified in rejecting the inference that the men would not have drilled after the requested discussion of the grievance.[5] The good-faith belief of the Company that the employees' conduct would have exceeded the bounds of protected activity is no defense for the action taken.[6]

The order of the Board will be enforced.

5. Cf. Duo-Bed Corp. v. National Labor Relations Board, 10 Cir., 337 F.2d 850, 851.

6. National Labor Relations Board v. Burnup & Sims, Inc., 379 U.S. 21, 23, 85 S.Ct. 171, 13 L.Ed.2d 1.